Zimmerman, J.
The bill of exceptions discloses that Mrs. Frick contracted with Philip W. Kessler, doing business as Atlas Construction Company, for the construction of a house for her on her property on what is commonly termed a cost-plus basis, that is, the total cost of the construction of the building plus a certain per cent of that amount as profit or compensation for Kessler.
Kessler entered into a contract with Rebisso, at a stipulated price of $3,270, whereby the latter was to install “the plumbing, gas fitting and sewer work.” Kessler paid Rebisso $1,635 on account of the work it had done, and then he, in May of 1949 and before the house was finished, abandoned his contract with Mrs. Frick. Mrs. Frick declined to allow Rebisso to complete the work it had contracted with Kessler to do, whereupon Rebisso filed a mechanic’s lien for $1,-547.08 against Mrs. Frick’s property.
In Rebisso’s affidavit as subcontractor, Adams was listed as a materialman, and for that reason Mrs. Frick challenges the validity of the lien. As previously noted, if Adams was a materialman, Rebisso’s lien is good; if he was a subcontractor, it is fatally defective.
It appears from the bill of exceptions that Rebisso ordered from Adams, the manufacturer, a 700-gallon concrete septic tank to be delivered by Adams on Mrs. Frick’s premises. This tank, oblong in shape, was made in three sections, which fitted together, plus a lid. Its total weight approximated 4,400 pounds. The construction in sections at the plant was deemed expedient because of the considerable weight of the as *452 sembled tank which would make its handling and transportation in one piece an awkward and difficult matter. Adams ’ employees deposited the tank, one section upon another,, in an excavation or hole prepared by Rebisso, and the only additional labor they supplied was the cementing of the sections together. The furnishing of all work and materials to fabricate the septic tank into the building, make the necessary connections and render the tank serviceable and ready for use was the responsibility of Rebisso.
Upon this evidence, the Court of Appeals determined that Adams was essentially a materialman and should be classed as such. In reaching that conclusion, the court relied on paragraph two of the syllabus in the case of Matzinger v. Harvard Lumber Co., 115 Ohio St., 555, 155 N. E., 131, which reads as follows:
“Whether materials furnished by a dealer to a contractor to be used in the process of the erection of a building were selected from the stock of the dealer or made by him in his own establishment or procured from another for the particular purpose, such dealer, having nothing to do relative to the installation of said materials or the fabrication thereof into the structure, is a material man and not a subcontractor.”
In our view, the only real difference between the Matzinger case and the instant one is that in the former a lumber company, which was held to be a materialman, completed the manufacture of its woodwork at its place of business, whereas here Adams completed the fabrication of the septic tank at the delivery site, by placing its parts together, where afterwards it was to be attached to Mrs. Frick’s house by others and made a serviceable adjunct thereto.
It is our opinion that the determination, of the Court of Appeals that Adams answered the description of a materialman and should be placed in that classification is justified and may not be disturbed by this court.
*453 In its cross-appeal Rebisso complains that the Court of Appeals did not allow it enough money under its lien, in accordance with the theory of recovery adopted by such court. That court found there is due Rebisso the sum of $761.29 with interest at 6 per cent from June 20, 1949, or a total of $863.71. Just how the principal amount was arrived at is not clear, but in its opinion the Court of Appeals said:
“Under the facts of this case, the recovery and the amount thereof would be controlled by the principles expounded in Allen, Heaton & McDonald, Inc., v. Castle Farm Amusement Co., 151 Ohio St., 522, 86 N. E. (2d), 782, wherein it is stated in the third paragraph of the syllabus:
“ ‘In such a case, plaintiff has the burden of alleging and proving not only (a) what he would have received under the contract from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract.’
“A decree in accordance with this opinion may be presented. ’ ’
* It thus seems that the Court of Appeals based its finding on the law of damages as it pertains to breach of contract and intended to allow Rebisso the amount it would have received under its .contract with Kessler, the defaulting contractor, had its contract been fully performed, less what that full performance would have cost it.
Rebisso apparently agrees with this theory and in the brief filed by its counsel says:
“ * * * we think the greater weight of authority favors permitting the subcontractor [Rebisso] to have a lien for the contract price, less the cost to complete the contract.”
*454 The evidence is meager as to whether the cost-plus construction contract entered into by Mrs. Erick and Kessler created an agency relationship between them which would bind her as to the agreements made by Kessler with subcontractors. The strong indications are that such was not the case. It was Kessler who procured the services of Rebisso and it was Kessler who made part payment to Rebisso. Mrs. Frick was apparently a stranger to these transactions. Moreover, Rebisso filed a lien against Mrs. Frick’s property and made no attempt to pursue her personally.
In our opinion, neither Section 8323-1, General Code, which relates to the failure of the owner to perform his part of a contract made with the contractor, nor the principles covering breach of contract involving directly the contracting parties, laid down in the Allen case, supra, should be applied here.
We think that in a case of the kind now before us, where the owner of real property enters into an agreement with a general contractor for the complete erection of a structure on such property on a cost-plus basis, the general contractor independent of the owner then enters into agreements with subcontractors to complete parts of such structure for stipulated sums, and thereafter the general contractor breaches his contracts and abandons the undertaking before the structure is finished, the amounts for which mechanics ’ liens may be enforced on the owner’s property by the subcontractors are the reasonable value of the labor and materials they have actually furnished on the project. Ordinarily, such reasonable value is the costs to the subcontractors of the labor and materials supplied by them with a fair profit added thereto. Compare Christman v. Salway, 103 Ore., 666, 676, 205 P., 541, 545; 36 American Jurisprudence, 110, Section 164; Elder Mercantile Co. v. Ottawa Investment Co., 100 Kan., 597, 607, 165 P., 279, 283; 58 American Jurisprudence, 518, Section 10. However, the amounts found *455 to be due the subcontractors should never be larger than the total sums for which they agreed to complete their part of the work on the structure involved. Such statement may appear inconsistent with what has been previously said but surely the owner of the premises against which the lien is being asserted is entitled to that much of a break.
Of course, any amounts the subcontractors may have received on account of the work they have performed should be deducted from the total sums found due them.
It is to be observed that there was no privity of contract between Mrs. Frick and Rebisso. Kessler, the defaulting contractor, agreed with Mrs. Frick to build her a house under a cost-plus arrangement and not for any definite sum stipulated in advance. In these circumstances, we believe, the rule outlined above is the proper and just one to adopt. Rebisso furnished labor and materials on the project in good faith under its contract with Kessler, and Mrs. Frick’s property was undoubtedly benefitted by what it did. Mrs. Frick, in declining to allow Rebisso to finish its work after Kessler’s default, breached no contract be-' tween it and her.
Although in some instances the application of the rule we have stated and the one adopted and applied by the Court of Appeals might bring about similar results, there is a difference which no doubt would be apparent in other cases.
That part of the judgment of the Court of Appeals which establishes the validity of Rebisso’s lien is affirmed, but that part which covers the basis and amount of recovery is reversed and the cause is remanded to the Court of Appeals with directions to determine in conformity with this opinion the amount due Rebisso.

Judgment affirmed in part and reversed in part.

*456 Weygandt, C. J., Middleton, Matthias, Hart and Stewart, JJ., concur.
Taet, J., dissents.