**BLINNE CONTRACTING COMPANY, INC., Plaintiff,**

v.

**BOBBY GOINS ENTERPRISES, INC., et al., Defendants.**

No. 85–1204–K.

United States District Court, D. Kansas.

July 5, 1989.

Roy Niedermayer, Washington, D.C., Rodney H. Glover, Thomas & Fiske, Alexandria, Va., Lee Thompson, Martin, Pringle Oliver, Triplett & Wallace, Wichita, Kan., for plaintiff.

B.J. Hickert, Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., and Leonard J. Johnson, Theresa L.F. Levings, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., Robert C. Brown, Smith, Shay, Farmer & Wetta, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The present case arises from a 1983 public works contract for the creation of a water pipeline in Elk County, Kansas. Rural Water District No. 1 of Elk County entered into a general contract with Bobby Goins Enterprises for the construction of the pipeline. Goins subsequently entered into a contract with Blinne Contracting Co. for Blinne to perform subcontracting work on the pipeline project. Pursuant to K.S.A. 60–1111(a), Goins obtained a performance bond in the amount of $1,521,289.00. The bond was provided by the Aetna Casualty and Surety Company.

Plaintiff Blinne Contracting seeks recovery against Goins and Aetna for losses allegedly due when the general contractor Goins failed to satisfy its obligations on a public works contract. Both parties have moved for summary judgment.

In its motion for summary judgment, Blinne presents specified damage figures for which it seeks recovery upon the determination of fault at trial. Should it be established at trial that the breach of the construction contract was the fault of Goins, Blinne contends that it would be entitled to damages in the amount of $385,-234.00, and prejudgment interest in the amount of $244,289.00. The first figure includes amounts representing lost profits to Blinne. Aetna has also moved for summary judgment. It contends that the breach of the pipeline construction contract was actually the fault of Blinne, rather than Goins. Aetna therefore seeks recovery against Blinne for amounts paid by Aetna to other subcontractors and third parties.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Burnette v. Dresser Industries, Inc.*, 849 F.2d 1277, 1284 (10th Cir. 1988). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A hearing on the motions was held June 9, 1989. The court now makes the following conclusions of law with regard to the parties' motions.

Aetna seeks to obtain recognition for set-off rights against Blinne for amounts paid by Aetna to third parties. Aetna's motion for partial summary judgment must be denied.

■ The general right of a surety to set-off for its claims against a creditor is not in doubt. However, Aetna's contention that it was actually Blinne that caused the pipeline project to fail is wholly unsupported. Summary judgment on this issue, therefore, would be both premature and unnecessary. If Aetna can prove at trial that Blinne was at fault, an appropriate instruction on set-off may be granted.

In Blinne's motion, it includes a long summary of the specific expenses for which it seeks recovery. Again, this is a matter better saved for the attention of the jury. The court therefore will address the general types of damages that are recoverable, while leaving for trial the specific amounts to be attached to each type.

The main issue presently disputed between the parties involves the standard of recovery for any damages owing to Blinne. Aetna does not dispute one element of Blinne's claimed damages: $221,845.00. This amount reflects the contract price for pipeline footage actually installed by Blinne during the course of the contract.

However, Blinne's claim for damages also contains several elements which are the subject of dispute. In addition to the above amount representing the costs of the installed pipeline, Blinne also seeks recovery for labor and materials costs, equipment rental costs, transportation costs,[1] and lost profits arising from the alleged breach of the contract by Goins. In addition, Blinne seeks prejudgment interest for Aetna's failure to pay Blinne under the terms of the bond.

Blinne's argument is primarily based on analogy. It correctly notes that the purpose of K.S.A. 60–1111 is to protect public works projects from the attachment of mechanic's liens. *Leidigh & Havens Lumber Co. v. Bollinger,* 193 Kan. 600, 396 P.2d 320 (1964). Next, Blinne cites *Elder Mercantile Co. v. Ottawa Investment Co.,* 100 Kan. 597, 165 P. 279 (1917), for the proposition that lost profits may be considered as valid elements of a mechanic's lien. Blinne then concludes by contending that since lost profits may form an element of a mechanic's lien, they must also constitute a basis for recovery against a bond issued pursuant to K.S.A. 60–1111.

There are two considerations which invalidate this argument. First, while the purpose of K.S.A. 60–1111 may be to protect public works projects from the attachment of mechanic's liens, it does not necessarily follow that every element of a potential mechanic's lien is also recoverable against the performance bond. The scope of coverage of a bond issued pursuant to K.S.A. 60–1111 is controlled by the language contained in the statute. K.S.A. 60–1111 provides that the bond may be the source of recovery for

all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements.

■ Had the state legislature intended profits lost or damages incurred as a result of a contract breach to be recoverable against the bond, it could have included these elements within the list of debts recoverable against the bond enumerated in K.S.A. 60–1111. Instead, the legislature adopted a more narrow approach. Under K.S.A. 60–1111, only the value of goods and services actually expended in connection with the public improvements are recoverable against the bond.

Additional claims, whether for lost profits or for additional expenses incurred as a result of another's breach of the contract, do not form a basis for recovery against the performance bonds. These claims must instead be asserted through some other vehicle, such as a contract claim against the party responsible for the breach.

---

1. Blinne correctly points out that transportation costs and the costs of equipment rental would appear to be recoverable in an action on a performance bond under K.S.A. 60–1111. However, this obscures the important point: whether these expenses were *actually incurred* during the performance of the subcontractor's work.

As discussed below, recovery may not be had under the performance bond for breach of contract damages in general, only for the value of labor and materials actually supplied under the contract. Thus, Blinne's claims for the rental value of "idle equipment" are not recoverable under the bond.

The second reason Blinne's analogy must be rejected is that, even if the plain language of K.S.A. 60–1111 is disregarded, and all elements of a mechanic's lien are to be treated as a basis for recovery against the performance bond, it has nonetheless misinterpreted the law relating to mechanic's liens. *Elder Mercantile*, cited by Blinne, does not stand for the proposition that all the damages for a breach of contract (including lost profits) may form part of mechanic's lien. The case's holding is much more narrow, and in fact undermines Blinne's position.

In *Elder Mercantile*, the court held that a materialman was entitled to include within the amount of its lien the actual cost of items supplied under the contract along with a reasonable profit for those items. The court stated, "certainly it cannot be expected that materialmen are to furnish their goods without any profit whatever...." 100 Kan. at 607, 165 P. 279. It then upheld the inclusion within the lien amount of a profit element of 20%, finding no evidence that such a profit would be unfair or unreasonable.

However, while the court allowed the inclusion of a profit element within the calculation of the value of items actually supplied by the materialman, it reversed the district court's award of profits to the materialman for goods which were not actually supplied under the contract:

> However, an additional charge of $860.85 was made for twenty per cent profit on the balance of the uncompleted contract, that is to say, if the [materialman] had been permitted to go ahead and furnish $4304.29 worth more of material it would then have been entitled to a profit thereon of twenty per cent, or $860.85. As this amount was not furnished, and as the material which otherwise would have gone into this building was still the property of the company, no ground exists for charging this twenty per cent profit on something which never was furnished or used.

100 Kan. at 608, 165 P. 279.

Thus, under *Elder Mercantile*, profits may be included in calculating the value of material actually supplied under the terms of the contract. However, the lien will not include *lost* profits, in the sense of profit for those materials which would have been supplied if the materialman "were permitted to go ahead" and complete the contract.

Blinne's attempt to recover against the performance bond amounts which it would have obtained if the contract had been performed must be rejected. These amounts, including the claims for lost profits, the rental value of idle equipment, and increased expenses, represent damages flowing from the breach of the contract. Accordingly, they cannot form the basis for recovery *against the bond*. Blinne may pursue these claims against Goins. Against the performance bond, however, Blinne may only assert those claims which represent the fair value of materials and services actually supplied under the contract.

Blinne also makes a claim for prejudgment interest, pursuant to K.S.A. 16–201, in the amount of $244,289.00. This figure, of course, must be rejected since it includes elements of damages not recoverable (as discussed above) under the performance bond. However, Blinne is entitled to an award of prejudgment interest on the remainder of its claim.

On the matter of prejudgment interest, Blinne merely asserts that prejudgment interest is recoverable in an action on a performance bond, and cites *Bob Eldridge Constr. Co. v. Pioneer Materials, Inc.*, 235 Kan. 599, 684 P.2d 355 (1984). In this case, however, the court upheld an award of prejudgment interest under K.S.A. 16–205(a), which permits an award of interest "[w]hen a rate of interest or charges is specified" in the contract. In the present case, the subcontract agreement between Goins and Blinne contains no such provision.

Aetna, on the other hand, merely asserts without explanation that the amount at issue is "disputed and uncertain," and that the date from which the interest is to run is

"subject to question." Under Kansas law, a party may recover prejudgment interest on a liquidated claim for damages. K.S.A. 16–201. A claim is liquidated when "both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *First Nat'l Bank v. Bankers Dispatch Corp.*, 221 Kan. 528, 537, 562 P.2d 32 (1977).

In *Southern Painting Co. v. United States*, 222 F.2d 431 (10th Cir.1955), the Tenth Circuit held that a subcontractor was not entitled to recover prejudgment interest in an action on a performance bond under the Miller Act, 40 U.S.C. § 270a, *et seq.* The court first determined that Kansas law governed any award of prejudgment interest. 222 F.2d at 434. The court concluded that under the facts present in the case, an award of prejudgment interest was not permissible under Kansas law, since "[t]he evidence as to the value of [the subcontractor's] services was in sharp conflict." 222 F.2d at 436.

 In the present case, Blinne is entitled to an award of prejudgment interest on the value of goods and services it actually used or expended in performing its obligations under the contract. Unlike the situation in *Southern Painting,* this value is sufficiently subject to mathematical calculation, and is not the subject of serious dispute. For example, in its memorandum, Aetna does not dispute the $221,845.00 figure for the unpaid balance of the contract as an appropriate measure of damages. This figure represents the contract price for the pipeline footage actually installed by Blinne, and is not the subject of any dispute between the parties.

Aetna's argument that prejudgment interest is inappropriate since the date from which the interest would run is "subject to question" must also be rejected. A surety may be held liable for prejudgment interest on a performance bond from the date its principal breached its obligations. *See Commonwealth Use of Ft. Pitt Bridge Works v. Continental Casualty Co.,* 429 Pa. 366, 240 A.2d 493, 494 (1968); *Home*

*Owners Ins. Co. v. Charles Sales Corp.,* 222 So.2d 37, 38 (Fla.Dist.Ct.App.1969).

IT IS ACCORDINGLY ORDERED this 5 day of July, 1989, that Aetna's motion for partial summary judgment is denied.

IT IS FURTHER ORDERED that partial summary judgment is granted against Blinne on its claims for contract damages (including lost profits) arising from Goins' alleged breach for goods or services which were not actually supplied or expended under the pipeline contract. These sums are not recoverable against the performance bond.

IT IS FURTHER ORDERED that partial summary judgment is granted in favor of Blinne on its claim for the value of goods and services actually supplied under the pipeline subcontract as an appropriate standard of damages for recovery against the bond. In addition, prejudgment interest is awarded on this amount.