**TRESTLE & TOWER ENGINEERING, INC., Plaintiff,**

v.

**STAR INSURANCE COMPANY, Defendant.**

No. 97–4070–RDR.

United States District Court, D. Kansas.

July 6, 1998.

Charles D. McAtee, Schroer, Rice, P.A., Topeka, KS, for Trestle and Tower Engineering, Inc., plaintiff.

Thomas J. Koehler, Michael J Blake, Levy & Craig, P.C., Kansas City, MO, for Star Insurance Company, defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to recover on a bond issued for the Kansas Avenue bridge project in Topeka, Kansas. Plaintiff supplied materials and equipment for that project. Defendant issued the bond for the project. Western Bridge Corporation was the general contractor for the project. Following the completion of the project, Western Bridge filed for bankruptcy. This matter is presently before the court upon defendant's mo-

tion to dismiss or, in the alternative, for summary judgment.[1]

## I.

The defendant argues that this action should be dismissed because plaintiff, a foreign corporation, has not registered to do business in Kansas as required by K.S.A. 17–7307. This statute states in pertinent part:

> A foreign corporation which is required to comply with the provisions of K.S.A. 17–7301 and 17–7302 and which has done business in this state without authority shall not maintain any action or special proceeding in this state, unless and until such corporation has been authorized to do business in this state and has paid to the state all taxes, fees and penalties which would have been due for the years or parts thereof during which it did business in this state without authority.

A foreign corporation barred from maintaining an action in the Kansas courts by virtue of this statute is also precluded from maintaining an action in the federal courts of the state. *Wilson v. Williams,* 222 F.2d 692, 697 (10th Cir.1955).

The parties are at odds over whether plaintiff "did business" in Kansas. The definition of "doing business" in Kansas is set forth in K.S.A. 17–7303 as follows:

> Every foreign corporation that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents in this state for sale, delivery or distribution, shall be held to be doing business in this state within the meaning of this act.

Plaintiff has acknowledged that it was not registered pursuant to K.S.A. 17–7301. Plaintiff, however, contends that it was not doing business in Kansas as defined in K.S.A. 17–7303. Plaintiff asserts that it did not have an "office," "place of business" or "dis-

---

1. The defendant has also filed a motion to strike or to disregard the affidavit of Mr. Lawrence G. Brienen, Executive Vice–President of Trestle & Tower Engineering, Inc., that was attached to plaintiff's response to the instant motion. The defendant contends that the affidavit must be stricken or disregarded because it contains legal conclusions and is not based on personal knowledge. The court shall not strike the affidavit, but shall simply disregard those portions of the affidavit not based on personal knowledge and those portions containing legal conclusions. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1459 (S.D.N.Y.1983).

tributing point" in Kansas. It further asserts that it did not deliver any "wares or products to resident agents in [Kansas] for sale, delivery or distribution." Finally, plaintiff argues that K.S.A. 17–7307(a) is not applicable to foreign corporations that provide only "services." In the alternative, plaintiff contends that it should be given reasonable time to comply with K.S.A. 17–7301 if it is found that it was doing business in Kansas.

The defendant contends that plaintiff cannot bring this action because it has never been authorized to do business in Kansas. The defendant argues that plaintiff was doing business in Kansas when it supplied equipment, materials and supplies for the Kansas Avenue bridge project and, therefore, was required to comply with K.S.A. 17–7301.

■ The determination of whether a foreign corporation is doing business in Kansas requires an evaluation of the particular facts of each situation. *Toedman v. Nooter Corp.*, 180 Kan. 703, 308 P.2d 138, 142 (1957). Fixed, definite or precise rules cannot be applied. *Id.* "Doing business" in Kansas means that a foreign corporation must (1) establish an office, place of business or distribution point in Kansas, or (2) deliver its wares or products to agents in Kansas for sale, delivery or distribution. *Panhandle Agri–Service, Inc. v. Becker*, 231 Kan. 291, 644 P.2d 413, 417 (1982).

■ Many of the facts pertinent to this motion are not in dispute. Plaintiff is a Wisconsin corporation. It has not been authorized to do business in Kansas. Plaintiff supplied goods and services for Western Bridge and AHL, Inc. in connection with the Kansas Avenue bridge project. AHL, Inc. was a subcontractor on the project. Plaintiff moved some of Western Bridge's equipment to the site from Michigan. It also supplied 40 tons of grit to Western Bridge for the project. Plaintiff had a rental agreement with Western Bridge for the use of a lowboy trailer for transportation of some of the equipment and the grit. Plaintiff entered into a lease agreement with AHL for supplies and equipment. Plaintiff provided an equipment trailer to AHL for its use on the project. Plaintiff also supplied other equipment to AHL for the project. Lawrence G. Brienen, Executive Vice–President of plaintiff, made two trips to the project to inspect the project site. Other employees made several trips to the project from February through the middle of May.

Recently, this court considered this issue in a related case, *A.H.L., Inc. v. Star Insurance Co.*, 10 F.Supp.2d 1216 (D.Kan.1998). There, the court determined that AHL was doing business in Kansas during its work on the Kansas Avenue bridge project. AHL was a subcontractor on the project and performed substantial work during the period of construction in 1996. This case, however, differs substantially from *AHL*. The actions of Trestle & Tower are not as direct, substantial and continuous as those of AHL.

The determination of whether the actions of a lessor constitute doing business within statutes prescribing conditions of right to do business in a state are far from clear. *See* Brazener, "Foreign Corporation's Leasing of Personal Property as Doing Business Within Statutes Prescribing Conditions of Right to Do Business," 50 A.L.R.3d 1020 (1973 & Supp.1997). There is no Kansas case law on the issue. In cases involving foreign suppliers and lessors, courts in other states have focused upon whether the activities are interstate or intrastate in nature. *Id.* at 1025; *see also Sierra Glass & Mirror v. Viking Industries, Inc.*, 107 Nev. 119, 808 P.2d 512, 513–14 (1991). If the leasing transaction is essentially interstate in character, it does not constitute "doing business" within the state by the lessor. Whether the act of entering into the lease constitutes interstate or intrastate commerce can depend upon several factors, including where the contract was negotiated, where it was executed, and whether it requires an interstate shipment of goods. 50 A.L.R.3d at 1025.

One Kansas case does provide some guidance here. In *Panhandle Agri–Service*, the Kansas Supreme Court considered whether a company who contracted to purchase hay from an individual in Kansas was doing business in Kansas. The company, a Texas corporation, had reached an agreement with a Kansas resident to purchase hay to be sold in Texas. The agreement provided that *Panhandle Agri–Service* would transport the hay from Kansas to Texas. Under these circum-

stances, the Kansas Supreme Court concluded that Panhandle Agri–Service was not doing business in Kansas under K.S.A. 17–7303. The Court noted that Panhandle Agri–Service had no office, place of business or distributing point in Kansas and did not deliver wares or products to resident agents in the state for sale, delivery, or distribution.

After considering all of the circumstances, we are not persuaded that Trestle & Tower was doing business in Kansas during the Kansas Avenue bridge project. Trestle & Tower supplied equipment, materials and manpower to both AHL and Western Bridge during the project. These various activities, however, were interstate in character. Trestle & Tower shipped and transported various goods and supplies to Kansas but did not maintain a presence in the state during the project. Accordingly, we do not find that plaintiff did business in Kansas as defined in K.S.A. 17–7303.

## II.

The defendant has also argued that plaintiff did not sufficiently comply with K.S.A. 68–410 prior to bringing this action. The defendant asserts that, contrary to this statute, plaintiff (1) failed to submit an itemized statement of its claimed indebtedness, (2) dated its statement prior to the acceptance of the project instead of six months after its completion, and (3) did not properly submit its statement to the Kansas Department of Transportation (KDOT).

The arguments made by the defendant allege violations of K.S.A. 68–410 which provide in pertinent part as follows:

That any person to whom there is due any sum for labor or material for any item covered by this act or his or her assigns, may bring an action on said bond for the recovery of said indebtedness and said suit may be brought in any county of the state where any part of the contract has been performed: Provided further, That no such action shall be brought on said bond unless within six (6) months after the completion date of said contract, according to the records of the secretary of transportation, there be filed with the secretary an itemized statement of the amount of such indebtedness. . . .

## A.

The defendant initially suggests that the plaintiff failed to properly itemize the statement sent to KDOT. The defendant asserts that the statement (1) contains only lump sum amounts, and (2) does not specifically set forth the amounts for labor, supplies, materials, tools and equipment.

In the letter sent to KDOT, plaintiff itemized its claim as follows:

1. Western Bridge Corp. took possession of 40 tons of steel grit for use in blasting and has never returned it. Western Bridge Corp. has acknowledged that steel grit has a value of $300.00 per ton.

$20,000.00

2. Western Bridge Corp. rented a Rogers LoBoy trailer to be used to move into Project No. 89–U–1458–01 and to use on the project. Rent due

7,200.00

3. Supplies, small tools and equipment taken from our company's job trailer located on the jobsite after the locks were cut by personnel from Western Bridge Corp.

24,000.00

4. Moving equipment from jobsite at the request of Western Bridge Corp.

| | |
|---|---|
| | 4,200.00 |
| Less credit and expenses paid by Western Bridge Corp. | −700.00 |
| | 3,500.00 |

5. Lease of equipment. All equipment on jobsite owned by Trestle & Tower Engineering Inc. and leased to AHL Incorporated of Delaware. Western Bridge Corp. fully informed of lease arrangements. 4.3 months @ $10,000.00 a month.

$45,000.00

| Total Claim | $99,700.00 |
|---|---|

■ Neither side has provided any Kansas case law on the proper construction of this statute concerning this issue, and the court failed to discover a relevant case. In another context, the Kansas courts have determined that the standard appropriate for testing the adequacy of a requirement of itemization of labor and materials furnished is "not too demanding." *See J. Walters Construction Co. v. Greystone South Partnership*, 15 Kan. App.2d 689, 817 P.2d 201, 207–08 (1991) (itemization for labor and materials under mechanic's lien statute adequate where contractors and subcontractors went beyond giving contract price). The court is not persuaded that a more demanding standard is required under K.S.A. 68–410, given the fail-

ure of the statute to provide any specifics concerning the requirements of itemization. The court believes the itemization supplied by the plaintiff was sufficient to comply with K.S.A. 68–410.

### B.

The defendant next argues that the notice sent to KDOT was not timely filed. The defendant suggests that the notice was dated prior to acceptance of the project and not within six months after the completion of the project.

The court finds no merit to this argument. The record shows that the project was accepted by KDOT on March 1, 1996. Plaintiff submitted its notice of claim on August 17, 1996. Accordingly, the notice was filed within the six-month time limitation contained in K.S.A. 68–410.

### C.

Finally, the defendant contends that the notice under K.S.A. 68–410 was improper because it was not delivered to the Secretary of Transportation. The defendant notes that the claim was sent to John C. Kleinschmidt, "Change Order Technician" at KDOT, not to the Secretary of Transportation as required by the statute. Plaintiff acknowledges that the notice was indeed sent to Mr. Kleinschmidt. Plaintiff notes, however, that Mr. Kleinschmidt is the Secretary of Transportation's designated representative for receiving such notices.

■ The court again finds no merit to the argument of the defendant. The record discloses that the Secretary of Transportation has named Mr. Kleinschmidt as his designated representative for receiving notices under K.S.A. 68–410. Accordingly, plaintiff's decision to send the notice to Mr. Kleinschmidt was appropriate and in substantial compliance with the terms of the statute. *See Rodack v. State Highway Comm.*, 225 Kan. 343, 591 P.2d 630, 634 (1979) (notice of claim under K.S.A. 68–419 sent to State Highway Commission and handled by attorney designated to handle such notice was sufficient to show substantial compliance with statute even though statute required that notice be "served" upon Director of Highways).

### III.

The defendant also contends that plaintiff is improperly seeking damages for equipment rental and losses due to theft or conversion. The defendant contends that neither of these items is covered by its bond.

Under K.S.A. 68–410, a surety bond may be the source of recovery for "all indebtedness incurred for supplies, materials or labor furnished, used or consumed in connection with or in or about the construction of the project for which the contract has been let, including gasoline, lubricating oils, fuel oils, greases, coal and similar items used or consumed and used directly in carrying out the provisions of the contract." The surety bond issued by the defendant here contained language similar to that contained in the statute.

### A.

■ The defendant argues that equipment rental costs are not recoverable under K.S.A. 68–410. We disagree. We hold that such costs are included in the coverage of the bond required by K.S.A. 68–410. The court is not convinced that the language of K.S.A. 68–410 precludes recovery for these costs. When a contractor or subcontractor leases equipment for use on a particular project the equipment contributes to its completion, and rental costs associated with the project should be recoverable under the surety bond.

A majority of the state courts, interpreting statutes quite similar to K.S.A. 68–410, have also held that equipment rental is within the coverage of the statutorily required surety bonds. *See Public Water Supply Dist. No. 3 v. Reliance Insurance Co.*, 708 S.W.2d 190, 191–92 (Mo.App.1986); *Arizona Gunite Builders, Inc. v. Continental Casualty Co.*, 105 Ariz. 99, 459 P.2d 724, 726 (1969); *McElhose v. Universal Surety Co.*, 182 Neb. 847, 158 N.W.2d 228, 233 (1968); *United States Fidelity & Guaranty Co. v. Feenaughty Machinery Co.*, 197 Wash. 569, 85 P.2d 1085, 1090 (1939); *Miller v. American Bonding Co.*, 133 Minn. 336, 158 N.W. 432 (1916). As stated by the court in *Bower v. Tebbs*, 132 Mont. 146, 314 P.2d 731, 739 (1957):

When a contractor rents a machine he rents the use of that machine, once used or operated so much life or use of the ma-

chine is destroyed—irretrievably lost. In this sense use of equipment is analogous to supplies which are consumed in the construction project. It is evident the statute and the bond are framed to protect those who rent machinery to contractors working on state projects in the same manner as they protect the laborer or materialmen.

Both sides have spent some time in discussing the applicability of the Miller Act, 40 U.S.C. § 270a, to this case. The defendant is correct that it has no direct application since it applies only to projects that involve the United States. Nevertheless, plaintiff is correct that the interpretation of the Miller Act by the federal courts provides some guidance here since the language of K.S.A. 68–410 and the Miller Act are quite similar. Cases decided under the Miller Act have uniformly held that equipment rental costs are recoverable. *See Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 383, 37 S.Ct. 614, 61 L.Ed. 1206 (1917); *Roane v. United States Fidelity & Guaranty Co.*, 378 F.2d 40, 43 (10th Cir. 1967).

The defendant has argued that Kansas case law supports its position on equipment rental costs, pointing to *Blinne Contracting Co., Inc. v. Bobby Goins Enterprises, Inc.*, 715 F.Supp. 1044 (D.Kan.1989). The court does not find that *Blinne* supports the defendant's position. The defendant has misread *Blinne*. In *Blinne*, plaintiff asserted various claims under a performance bond issued pursuant to K.S.A. 60–4111. Included among the claims was one for the rental value of idle equipment. Judge Kelly determined that such a claim could not be recovered against the bond. 715 F.Supp. at 1046 n. 1. However, in reaching this determination, he noted that the costs of equipment rental would be recoverable in an action on a performance bond under K.S.A. 60–1111. *Id.* He concluded that the claim asserted by plaintiff, one for the rental value of idle equipment, was not recoverable because these expenses were not actually incurred during the performance of the plaintiff's work. *Id.* He stated that "recovery may ... be had ... only for the value of labor and materials actually supplied under the contract." *Id.* In this case, plaintiff seeks damages under the surety bond for equipment rental costs, the very claim that Judge Kelly suggested would appear recoverable

under K.S.A. 60–4111. We see no reason why such a ruling would not apply as well to K.S.A. 68–410 given the similarities in the language in the two statutes.

Moreover, the court finds no Kansas case law that suggests otherwise. The defendant has pointed to two cases, one Kansas case and one Missouri case interpreting Kansas law, as support for its contention that equipment rental costs are not recoverable under K.S.A. 68–410. Once again, a close reading of these cases and the statutes analyzed in those cases fails to provide any support for the defendant's argument. In sum, the court finds that equipment rental costs are recoverable under the instant bond and K.S.A. 68–410.

In the alternative, the defendant has argued that plaintiff, as a lessor of equipment to AHL, is too "remote" to be covered by the defendant's bond. We disagree. Under Kansas law, a claim for labor, materials or supplies furnished to a subcontractor is within the coverage of a statutory bond. *Leidigh and Havens Lumber Co. v. Bollinger*, 193 Kan. 600, 396 P.2d 320, 323 (1964). As explained previously, plaintiff's claim for equipment rental is within the coverage of K.S.A. 68–410. Accordingly, a claim by a supplier of equipment is not too remote for coverage under the bond.

### B.

■ The defendant also argues that conversion or theft costs are not recoverable under K.S.A. 68–410. On this issue, we agree. The statute under which the bond was issued allows for the recovery of labor, materials and supplies used or consumed in connection with the particular project. Materials or supplies that are stolen or converted are not used or consumed in connection with the project. Plaintiff's contention stretches the language of K.S.A. 68–410 beyond any reasonable interpretation. This claim cannot be recovered against the bond issued by the defendant. It must be asserted through some other vehicle. Accordingly, the court shall dismiss plaintiff's claim based upon conversion or theft.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss or, in the alterna-

tive, for summary judgment (Doc. # 24) be hereby granted in part and denied in part. Plaintiff's claims based upon conversion and theft are hereby dismissed. The remainder of the defendant's motion is hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to strike or disregard the affidavit of Larry Brienen (Doc. # 30) is hereby granted in part and denied in part. The court shall disregard those portions of the affidavit not based on personal knowledge and those portions containing legal conclusions.

**IT IS SO ORDERED.**