No. 40,220

NEIL L. TOEDMAN, Director of Revenue, State Commission of Revenue and Taxation, *Appellant*, v. NOOTER CORPORATION, *Appellee*.

(308 P. 2d 138)

Opinion filed March 9, 1957.

*Michael A. Barbara*, of Topeka, argued the cause and *Paul Hurd*, of Topeka, was with him on the briefs for the appellant.

*William B. McElhenny*, of Topeka, argued the cause and *Willard N. Van Slyck, Jr., Clayton E. Kline, M. F. Cosgrove*, and *Robert E. Russell*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HALL, J.: This action was brought by the Director of Revenue of the State Commission of Revenue and Taxation to collect state use taxes assessed by the Commission against the Nooter Corporation, a foreign corporation, not authorized to do business in this state. The trial court sustained a motion of defendant corporation to quash the service of summons. The director has appealed. Service was attempted pursuant to G. S. 1949, 17-509. It provides in part as follows:

"In the event of any foreign corporation doing business within the state of Kansas, and failing to appoint the secretary of state as agent upon whom service of summons or other process can be had, or failing to file in the office of the secretary of state duly certified copies of its charter, or failing to pay the license as required by law, any person having any cause of action against such foreign corporation, which cause of action arose in Kansas out of the said foreign corporation's doing business within the state of Kansas, or while such foreign corporation was doing business within the state of Kansas, may file suit against such foreign corporation in the county in this state where such cause of action arose, or in the county in which the plaintiff may reside, and service of summons or any process upon the secretary of state shall be sufficient to warrant the rendition of personal judgment against said corporation."

The remainder of the section is not important to the decision here because it is conceded that all the procedural steps under the statute were properly taken.

It will be noted the applicability of this section depends on whether the corporation, upon which service is sought, pursuant to it, was or was not doing business in the state. Our inquiry is— Was the defendant corporation doing business in this state? Here we must first consider G. S. 1949, 17-506. That section provides as follows:

"Every corporation organized under the laws of another state, territory or foreign country that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents for sale, delivery or distribution, shall be held to be doing business in this state within the meaning of this act."

The defendant argues here and the trial court held the transaction in question could not be interpreted in such a manner as to hold defendant was doing business within the state, as defined by G. S. 1949, 17-506. Upon that theory the defendant moved to quash the service of summons and the court sustained it. The court said:

". . . I have come to the conclusion that the transaction involved in this action cannot be interpreted in such a manner as to find that the defendant corporation was doing business within the state as defined in Section 17-506 of the Revised Statutes of Kansas of 1949. It is my judgment that the authorities clearly hold that this transaction is merely a part of an interstate transaction and that service cannot be had upon the defendant in the manner obtained in this case."

At the hearing on the motion to quash, the defendant supported it by affidavits of two officers of the company. Plaintiff objected to this, served notice and took depositions at the office of the defendant at St. Louis.

There really is no dispute as to the ultimate facts in this case. An examination of the contract between defendant and Leonard Construction Company and the testimony of officers of defendant as to what it agreed to do in this state and how the work was carried on is as follows:

Defendant Nooter Corporation, a subcontractor, with its plant located at St. Louis, Missouri, entered into a contract with the Leonard Construction Company of St. Louis, Missouri, the general contractor. The contract was to erect a plant for the Eagle Pitcher Lead Company at Galena, Kansas. Defendant agreed with Leonard to fabricate at its St. Louis plant certain storage tanks and accessories and to erect them at Galena. Construction began about August 24, 1953, and was completed about December 30, 1953, with final tests and acceptance from February 3, 1954 to February 16, 1954.

Defendant agreed with the Leonard Construction Company to provide all the material and perform all of the work furnishing, fabricating, delivering and erecting a Contract Sulfuric Acid Plant for Eagle Pitcher at Galena, Kansas; the price was $253,833; that before any payment should be made defendant should submit evidence that all payrolls, material, bills and other indebtedness had been paid and that any and *all sales and use taxes*, which might be levied upon the work or upon any materials furnished, were in-

cluded in the contract price unless otherwise provided in the agreement; that the subcontractor should pay all contributions or taxes measured by the wages of his employees, which might be assessed for old age security, unemployment insurance by the federal government and any state having jurisdiction and agreed to accept exclusive liability for such contributions and taxes; the subcontractor agreed to provide and pay compensation for injuries and occupational diseases sustained by any of his employees arising out of or in the course of his employment in accordance with the laws of any state having jurisdiction and to carry insurance fully itself; that the subcontractor should carry public liability insurance in the amount of not less than $100,000 to protect himself, the general contractor, architect, engineer and the owner against all claims for damages for personal injuries arising from operations carried on by the subcontractors; that the subcontractor should provide for property damage insurance in the amount of $100,000 to protect the owner, the general contractor, the architect and the engineer from any loss in suits; that the subcontractor should elect to become an employer as that term was defined under the unemployment compensation laws of Kansas; that the field erection was based upon A. F. of L. labor rates governing in Galena and on a forty-hour week. (Emphasis ours.)

The first witness whose deposition was taken testified, identifying the above contract; that the work was done pursuant to it and the work was typical of that done by defendant.

The other witness testified that he was vice president in charge of construction for defendant and supervisor of the work at Galena; that defendant brought into the state welding machines, electric hoists and braces for scaffolds; that they rented in Galena a crane, a big rig and some other equipment; that they shipped the steel plates to Galena, welded them and sometimes tested the vessels; the pieces were shipped knocked down and assembled at Galena; that pending construction the material was stored as near the foundations as possible; that they hired from thirteen to twenty men from around Galena; that they paid the men by check, and usually had an account in a local bank, but might have had it in Joplin on this occasion; that usually the customer would furnish some kind of a room for the men to change clothes; that they had some phone calls and usually handled them through the Leonard Construction office; they had no city telephone list-

ing; they mailed their paper work in care of Leonard Construction at a post office box; the time of workmen was taken on the job; the men made out the time sheets at night at home; that Clampitt, the foreman, carried the blue prints around in his hip pocket and if he wanted to refer to them he would go into the Leonard office; that the testing was condition precedent to passing title to the company.

*In toto,* the defendant corporation was engaged on the job in Kansas for almost six months.

On the basis of the indisputed facts of the case, this court must disagree with the district court's judgment that defendant corporation was not doing business within the state as defined by G. S. 1949, 17-506.

The facts and circumstances of this operation in Kansas bring the defendant corporation well within the provisions of G. S. 1949, 17-506 in that the defendant corporation had "a place of business within this state."

What constitutes "doing business" has been before this court on many occasions and the question of whether a corporation is "doing business" in the state is always determined according to the facts in each individual case rather than by the application of fixed or definite rules. See *State v. Knights of the Ku Klux Klan,* 117 Kan. 564, 232 Pac. 254; and *Freeman v. Keltner,* 175 Kan. 37, 259 P. 2d 228.

See 20 C. J. S. Corporations ¶ 1920, as follows:

"The determination of the question whether a foreign corporation is doing business within a state so as to be subject to suit therein is often a matter of difficulty and of extreme nicety. . . . Nevertheless no all-embracing rule as to what is 'doing business' has been laid down." 57 F. 2d 867.

"The question is one of fact, and it is to be determined largely according to the fact of each individual case rather than by the application of fixed, definite and precise rules." 97 F. 2d 297; 20 C. J. S. Corporations ¶ 1920, p. 151; *International Harvester v. Kentucky,* 234 U. S. 579, 58 L. ed. 1479; *People's Tobacco Co. v. American Tobacco Co.,* 246 U. S. 79, 86, 62 L. ed. 587; and *Life Association v. Boyer,* 62 Kan. 31, 61 Pac. 387.

"The character and extent of the business, must warrant the inference that the foreign corporation has subjected itself to the jurisdiction of the state. The business must have some continuity but it may be done by an unlicensed corporation. In applying this principle, it is frequently relevant, but not conclusive, that the transaction sought to be sued on seems to have arisen out of the activities of the foreign corporation in the state. All that is requisite is that enough be done to enable the court to say that the corporation is present in the state. The business which a foreign corporation

is conducting in the state, in order to give the courts of the state jurisdiction over it by proper service of process, must be a part of the business for which it was organized, or at least a part of the usual and ordinary business in which it is engaged."

In *Betterment Co. v. Reeves*, 73 Kan. 107, 114, 84 Pac. 560, the court stated:

"Statutes which provide for service of process on foreign corporations should be liberally construed for the accomplishment of the purpose intended, namely, that of bringing such persons into court. They are permitted to enter the state by comity only, and in the methods of subjecting them to the jurisdiction of the court they cannot insist upon a technical or strict construction in their favor."

Although it has not complied with G. S. 1955 Supp., 17-501, *et seq.*, to do business in the state a foreign corporation "doing business" in the state of Kansas as defined by G. S. 1949, 17-506 is subject to service of process under the provisions of G. S. 1949, 17-509.

In the case of *Williams v. Lumber Co.*, 105 Kan. 284, 288, 182 Pac. 552, the court said:

"The defendant makes the contention that as soon as it was shown without contradiction that no application had been made by it to do business in this state, and that it had not consented to be sued here by service of process on the secretary of state, sufficient grounds were established for sustaining the motion to quash the service. A corporation, however, might be engaged in doing business in this state, without having complied with the provisions of the statute; . . ."

The rule is well established that foreign corporations that have not qualified to do business in this state may sue and be sued in the local courts. (*Osborne v. Shilling*, 74 Kan. 675, 88 Pac. 258; *Williams v. Lumber Co.*, supra; and *Heart of America Ins. Agency v. Wichita Cab & Transport Co.*, 151 Kan. 420, 99 P. 2d 765.

In this state the methods of obtaining service of process upon foreign corporations are cumulative. Service may be obtained by any applicable law. A foreign corporation does not have to qualify under G. S. 1949, 17-506 to be subject to process either under 17-509 or any other applicable law. (*Groat v. Shallow Water Refining Co.*, 173 Kan. 346, 245 P. 2d 1208.)

A foreign corporation may also be "doing business" in the state and amenable to process under G. S. 1949, 17-509, although it is not "doing business" as defined by G. S. 1949, 17-506. See *Weishaar v. Butters Pump & Equipment Co.*, 149 Kan. 842, 843, 89 P. 2d 864.

The judgment of the district court holding that this transaction was a part of an interstate transaction, therefore, service cannot be had upon the defendant corporation under 17-509 is also in error.

It is well established that a state tax on merchandise brought into a state from another state or upon its sales after it had reached its destination is lawful when not discriminatory. (*Sonneborn Bros. v. Cureton,* 262 U. S. 506, 67 L. ed. 1095, 43 S. Ct. 643; and *Baldwin v. G. A. F. Seelig,* 294 U. S. 511, 79 L. ed. 1032, 55 S. Ct. 497. See, also, 101 ALR 55.)

There is abundant authority that state use tax statutes are not discriminatory and do not offend the commerce clause. (*Michigan-Wisconsin Pipe Line Co. v. Johnson,* 247 Iowa 583, 73 N. W. 2d 820; *Henneford v. Silas Mason Co.,* 300 U. S. 577, 81 L. ed. 814, 57 S. Ct. 524; *Southern Pac. Co. v. Gallagher,* 306 U. S. 167, 83 L. ed. 586, 59 S. Ct. 389; and *Pacific Tel. Co. v. Gallagher,* 306 U. S. 182, 83 L. ed. 595, 59 S. Ct. 396.)

In *General Trading Co. v. Tax Comm'n,* 322 U. S. 335, 64 S. Ct. 1028, 88 L. ed. 1309, the Supreme Court of the United States said in commenting on the use tax:

". . . The mere fact that property is used for interstate commerce or has come into the owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a state to the upkeep of which he may be asked to bear his fair share."

Appellee urges the court to disregard the deposition of the officers of defendant corporation obtained by plaintiff *ex parte* under authority of G. S. 1949, 60-2835. Appellee contends the procedure under this statute applied only to a situation in which affidavits are to be used "on the trial of an action," and that to be used in this proceeding was contrary to statute.

Since there is little, if any, dispute as to the ultimate facts of the transaction in question, appellee's position is not prejudiced by the appearance of the *ex parte* depositions in the record of this appeal. We see no need to pass on the merits of the point in this appeal.

The ruling of the district court quashing service of the summons on the defendant corporation is in error.

The judgment is reversed.

PRICE, J., dissenting.