337 So.2d 881 (1976)
A. E. LANDVOIGT, INC.
v.
LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM.
No. 10529.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
On Rehearing September 20, 1976.
Writs Refused December 3, 1976.
*882 Victor A. Sachse and Frank Simoneaux of Breazeale, Sachse and Wilson, Baton Rouge, for appellant.
William R. Carruth, Jr., Baton Rouge, for appellee.
Before LANDRY, COVINGTON and BARNETTE, JJ.
LANDRY, Judge.
Plaintiff A. E. Landvoigt, Inc. (Appellant) appeals from judgment dismissing its claim against defendant Louisiana State Employees' Retirement System (System) for a loan origination and processing fee of $135,000.00, representing one per cent of a loan commitment by System to Harry J. Hart (Developer) and West Side Twelve Corporation (WS 12), allegedly due Appellant for processing of any loans sought by Hart from the System on behalf of Hart individually or any Hart corporation. We reverse and render judgment in favor of Appellant.
Appellant is a mortgage banking firm incorporated under the laws of Maryland; its main office is in Arlington, Virginia. Appellant's business involves preparation and processing of mortgage loans from potential investors to developers. Essentially, Appellant gathers information concerning the financial needs of developers or other prospective borrowers and attempts to match these needs with interested investors. A typical operation involves presentation of a developer "package" to an investor, including appraisals of construction costs, architectural, legal and engineering costs, land values, interest rates, feasibility studies and an estimation of income to be generated by the project. If the investor approves the project and grants the developer a loan commitment, Appellant receives a loan origination and processing fee of one per cent of the loan commitment, which is standard compensation for such services in the mortgage banking business, and which fee is considered earned when a loan commitment is granted, irrespective of whether the loan is consummated.
A mortgage banker also services the loans it processes. Servicing includes primarily the collection of mortgage payments and remittance thereof to the lender. It also involves reporting delinquencies to the lender as well as payment of taxes and insurance on the mortgaged property. Mortgage bankers customarily receive a fee of one-eighth of one per cent of the declining loan balance as compensation for loan servicing.
Appellant maintains no office in Louisiana. Neither does Appellant have any employees, agents or representatives living in this state. It is conceded that Appellant has not qualified to do business here.
At this juncture, it suffices to note that Appellant's activity in this state consists solely of processing a single loan from System to Developer and, incidental thereto, entering into an agreement with System for the servicing of said loan. Included in the servicing agreement is the following provision upon which Appellant's action is founded:
"16. Company (System) agrees to protect Correspondent (Appellant) on all future business of clients introduced to Company by Correspondent by requesting said client to process his application through Correspondent."
On April 23, 1973, while negotiations concerning the loan servicing agreement were in progress, Appellant wrote System a letter relative to said proposed agreement which communication pertinently states:
"The people introduced in this transaction who should be referred to us on future transactions are as follows: *883 Hart & Fulco Enterprises, Inc.
Hart Construction, Inc.
Louisiana Equity & Funding, Inc.
Fulco Realty
Harry Hart
Roy Fulco
Les O'Neal"
The loan to Developer was closed in July, 1973. Appellant received its one per cent fee from Developer for having processed the application.
On July 13, 1973, System issued a loan commitment in the sum of $13,500,000.00 to WS 12, represented by Harry J. Hart, President, and Harry J. Hart, individually, for a land development project in West Baton Rouge Parish, Louisiana. Hart and WS 12 paid System a fee of $405,000.00 for granting the commitment. Part of the commitment agreement consisted of Hart's granting System a continuing personal guarantee to repay $2,700,000.00 of the loan if granted. System acknowledges it did not request Hart to process this application through Appellant. Appellant maintains said failure constituted a breach of hereinabove quoted paragraph 16 of the servicing agreement, thus entitling Appellant to the damages sought herein.
System argues that the servicing agreement was not a binding contract insofar as paragraph 16 is concerned because Hart was not obligated to process loans through Appellant if requested by System to do so. Alternatively, System urges there was no violation of the agreement because the application in question was by WS 12, which concern was not identified as Appellant's client. System also contends that Appellant is precluded from enforcing any claim in the courts of this state because Appellant failed to comply with applicable state registration laws, namely, LA-R.S. 51:701(8) and (9). Lastly, System alleges Appellant has failed to prove that damages were sustained, or the extent thereof.
Appellant contends the servicing agreement is a binding contract, and that System violated its terms by declining to request Hart to process the WS 12 application. Appellant also maintains it was not required to register as a mortgage broker as provided by former LA-R.S. 51:701(8) and (9), later repealed by Act 493 of 1974, because Appellant was approved by the Federal Housing Administration as a mortgagee, and therefore exempt from the statute in question. Alternatively, Appellant contends repeal of Section 701(8) and (9), above, by Act 493 of 1974 removed the penalty provisions of the former statute, including the prohibition against suit in this state to enforce a contract confected in violation of former Section 701. In the further alternative, Appellant suggests its exemption from local registration pursuant to Section 701, above, because Appellant is engaged in interstate commerce.
The lower court held that while WS 12 was in effect the alter ego of Hart, System was not bound to request WS 12 to process its application through Appellant because System could have made the loan to WS 12 even if Hart refused to process through Appellant after request by System. The trial court also found Appellant subject to registration under Section 701, above, based on the conclusion that Appellant was doing business in Louisiana and that Appellant could not claim the exemption afforded brokers engaged exclusively in interstate commerce. Lastly, the trial court held Appellant failed to establish damage or loss in that Appellant offered no proof that Hart would have processed the WS 12 application through Appellant had the System requested Hart to do so.
We agree with the trial court's determination that a loan to WS 12 was a loan to Hart in contemplation of Paragraph 16 of the servicing agreement. As noted above, the application was made jointly in the name of Hart, individually, and WS12 represented by Hart as its President. We likewise recall Hart's personal guarantee of a substantial percentage of the loan. In addition, we note that the *884 System's Director, Roy P. Schaefer, conceded the System's probable intent was to make the loan to Hart individually, regardless of the corporate form Hart might use for the particular project involved.
However, we disagree with the trial court's conclusion that Paragraph 16 of the servicing agreement did not bind System to make the request of Hart because System could have issued the commitment even though Hart might have failed to request Appellant to handle the processing. Conceding the correctness of this contention, it does not follow that System was not obligated to make the request. The contract provision clearly and unambiguously imposes upon System the onus of making the request. That Appellant was not assured benefits as a result of such a request is a matter of no moment. We readily perceive that a prospective borrower would be greatly influenced by a request or recommendation of a prospective lender, even though such a request be not mandatory. There can be little doubt but that the intended beneficiary of such a recommendation or request would receive a valuable advantage over his competitors. System's failure to make the request deprived Appellant of this advantage, and therefore constituted a breach of the contract obligation.
The following statutory provisions are pertinent herein:
LA-R.S. 51:701(8) and 710(D), as reenacted by Acts 61 and 66 of 1969, and prior to amendment of Act 493 of 1974, provided:
51:701(8):
"Loan broker' means any person who engages in the business of purchasing wages or salaries or who acts as a go-between, finder or agent of a lender or borrower of money for the purpose of procuring a loan of money, or who engages in the business of guaranteeing or endorsing notes and other evidences of indebtedness. `Loan broker' does not include any business approved by the Federal Housing Administration as an approved mortgagee, insofar only as any of its mortgage loan business is concerned, nor shall it include any business which is otherwise regulated or supervised by any agency of the Federal or State government or any corporation not considered to be transacting business in this state under the provisions of R.S. 12:302."
51:710(D):
"It shall be unlawful for any person to transact business in this state, either directly or indirectly, as a loan broker or as a mortgage loan company unless such person is registered in the office of the commissioner pursuant to the provisions of this Section."
LA-R.S. 51:715(F) states:
"No person who has made or engaged in the performance of any contract in violation of any provision of this Part or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract."
LA-R.S. 12:302 recites:
"302. Acts not considered transacting business.
Without excluding other activities which may not constitute transacting business in this state, a foreign corporation or a business association shall not be considered to be transacting business in this state, for the purpose of being required to procure a certificate of authority pursuant to R.S. 12:301, by reason of carrying on in this state any one or more of the following activities:
* * * * * *
H. Transacting any business in interstate or foreign commerce." *885 Act 493 of 1974 amended LA-R.S. 51:701(8) and 710(D), deleting therefrom all reference to loan brokers.
We pretermit consideration of whether Appellant was a loan broker as defined in the pertinent statutes, and also pretermit discussion of whether Appellant was exempt from the provisions of Section 701(8) because Appellant was allegedly a business approved by the Federal Housing Administration as an approved mortgagee. We do so upon finding that the activity of Appellant, in this instance, amounted to transaction of business in interstate commerce and as such was exempt, pursuant to LA-R.S. 12:302, from the registration provisions of LA-R.S. 51:701(8) and 710(D).
As previously noted, Appellant maintains no office in Louisiana and has no agents, employees or representatives residing in or making calls upon prospective borrowers or lenders in this state. Appellant's first contact with prospective Louisiana lenders or borrowers occurred in the spring of 1973, when Appellant learned of Hart's interest in acquiring a loan through a California company whose business is publishing names and projects of potential developers for use by mortgage banking corporations, to which publication Appellant subscribes. Appellant first searched among New York investors for a source of funding for Hart's project but found no interest in that area. Later, at a mortgage banker's convention, Appellant learned of the System's interest in real estate loans and contacted the System relative to Hart's proposed project. This initial contact was ensued by negotiations between all parties concerned, the bulk of which negotiations were carried on by mail and telephone. During the entire process, Appellant's representatives made but two trips to Louisiana. On April 10 and 11, 1973, Appellant's President, Edward T. Briner, and Executive Vice President, J. Richard Leon, flew to Louisiana for consultation with the System's Director, Roy P. Schaefer, Jr., and to inspect the motel in Bossier City, Louisiana, for which Hart was seeking financing. On April 11, 1973, the System's Board of Directors met and approved a loan commitment to Hart in the sum of $335,000.00. Briner returned to Louisiana on April 16, 1973, to personally pick up the loan commitment which was accepted by Developer on May 24, 1973. Meanwhile, negotiations were under way via mail and telephone regarding the terms of a Mortgage Servicing Agreement whereby Appellant would service the pending loan if it were ultimately confected. Appellant sent the System a servicing agreement form prepared by Appellant. The document was submitted to System's counsel who proposed certain changes. A copy of the amended document was sent back to Appellant who recommended certain further revisions. Ultimately, the agreement was revised by System's counsel to the mutual satisfaction of both parties. System signed the contract in Baton Rouge, Louisiana, and forwarded the document to Appellant who executed the agreement at Appellant's home office. The instrument bears the date of May 29, 1973. In servicing the mortgage agreement made pursuant to Developer's Bossier City loan, Appellant received, by U.S. mail, all monthly payments due by Developer thereunder at Appellant's collection office in Washington, D. C. Appellant then wired System its portion of the payments via remittance to System's bank in Baton Rouge, Louisiana. In fulfilling Appellant's obligations under the servicing agreement, Appellant has made only one trip to Louisiana. So far as the record shows, the mentioned service agreement is the only such transaction conducted by Appellant in this state.
The test for determining whether a loan broker is engaged in intrastate business is the same as that employed in deciding whether a foreign corporation's activity in a given state is such as to remove the corporation's sphere of operation from one in interstate commerce to a local state operation thus subjecting the corporate entity to local licensing and regulation. It is well settled that in this regard the question of *886 intrastate corporate activity must be determined in the light of the circumstances of each individual case. Hattiesburg Manufacturing Co., Inc. v. Pepe, La.App., 140 So.2d 449; Kirkeby-Natus Corporation v. Campbell, La.App., 210 So.2d 103; Equitable Discount Corporation v. Jefferson Television Sales and Service, La.App., 169 So.2d 567; J. Perez, S.A. v. Louisiana Rice Growers, Inc., La.App., 139 So.2d 247.
We conclude the nature and extent of Appellant's Louisiana activities constitute operation in interstate commerce. Such limited activity is insufficient, in our view, to constitute intrastate operation subjecting a foreign corporation to state licensing and regulation. Redi-Spuds, Inc. v. Dickey, 230 La. 406, 88 So.2d 801; Charles Pfizer & Co., Inc. v. Tyndall, La.App., 287 So.2d 552; Equitable Discount Corporation v. Jefferson Television Sales and Service, La.App., 169 So.2d 567; Hattiesburg Manufacturing Co. v. Pepe, La.App., 140 So.2d 449.
We are mindful of that line of authority which permits action in a state court against a foreign corporation having sufficient "minimal contact" within a state to satisfy the requirements of federal constitutional due process under local so called "Long Arm Statutes". See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Fisher v. Albany Machine & Supply Co., La.App., 246 So.2d 218. It is our view that the jurisprudence established by these authorities is inapplicable in determining whether an activity constitutes intrastate operation sufficient to support state regulation. We are of the further view that the jurisprudence concerning the amount of business activity required to support state regulation demands considerably more local activity than is necessary to subject a nonresident to a state's jurisdiction for purposes of litigation. We find the latter test has not been met in this instance.
Appellant concedes Paragraph 16 of the servicing agreement does not vest it with an exclusive correspondency. Appellant also admits that had Developer refused to permit Appellant to process the WS 12 application after having been so requested by System, Appellant would have had no enforceable right in the matter. However, Appellant urges that System's failure to perform deprived Appellant of the possibility of earning a fee with regard to the WS 12 transaction.
We find Appellant is entitled to damages, and that the extent of the recovery must be determined in the light of LA-C.C. Article 1934(3), which provides that where the object of a contract is other than the payment of money, damages due for breach are the amount of the loss sustained and the amount of profit of which the offended party is deprived. The article also recognizes exceptions wherein damages may be awarded for contractual breach in which damages cannot be calculated altogether in pecuniary loss. In such instances, much discretion is left to the court or jury in the assessment of damages.
Applying the foregoing principle herein, we note that Appellant offered no proof of actual loss as a result of System's breach. Neither did Appellant offer testimony to establish loss of profit. While Appellant claims the entire commission of $135,000.00, it is clear that Appellant would have incurred expense in processing the application. Although the record contains no evidence of normal loan processing expenses, we assume from the testimony of Appellant's representatives that such expenses would have been considerable. Obviously, Appellant has not sustained a loss in the entire amount of the fee.
Lost profits may be recovered as damages where they are not speculative or uncertain in nature and are susceptible of proof with reasonable certainty. George W. Garig Transfer, Inc. v. Harris, 226 La. 117, 75 So.2d 28; Southern Television Electronics v. Read, La.App., 244 So.2d 624.
Appellant has failed to establish loss of profits with that degree of certainty legally *887 required. Whether Developer would have processed the WS 12 application through Appellant if requested by System is a matter of sheer speculation under the facts of this case. It may be presumed that Developer would have so reacted if requested. However, Mr. Schaefer testified that Developer made it clear that Developer did not intend to borrow money from System, but that Developer desired the commitment solely for use in obtaining the actual loan from another source. If Developer's intent was as signified by Schaefer, Developer may well have declined to permit Appellant to process the loan.
Nevertheless, we find Appellant is entitled to compensatory damages for the System's breach. Under the recently announced rule espoused by the Supreme Court in Gonzales v. Xerox Corporation, et al., La., 320 So.2d 163, we shall assess damages herein rather than remand this matter to the trial court for performance of this function.
Exercising the broad discretion vested in us pursuant to the hereinabove cited authority, we find that Appellant is entitled to nominal damages, and also find that under the circumstances an award of Five Thousand and No/100 ($5,000.00) Dollars will do substantial justice between the parties.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed and set aside, and that there be judgment herein in favor of Appellant, A. E. Landvoigt, Inc., and against defendant, Louisiana State Employees Retirement System, in the full sum of Five Thousand ($5,000.00) Dollars, together with legal interest thereon from date of judicial demand, until paid; all costs of these proceedings for which defendant may be legally cast shall be paid by defendant.
Reversed and rendered.

ON REHEARING
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Plaintiff and defendant having each urged numerous errors in our original decree, we granted both litigants a full rehearing to reconsider all facets of our initial opinion.
After hearing the argument and considering the briefs of the parties in support of their averred errors in our prior judgment, we conclude that all issues raised on rehearing were adequately considered and properly disposed of in our first decree.
Accordingly, the original opinion rendered herein is affirmed without amendment or modification. Each party to this litigation shall pay the cost of its application for rehearing.