**A.H.L. INCORPORATED OF DELAWARE, Plaintiff,**

v.

**STAR INSURANCE COMPANY, Defendant.**

No. 97–4069–RDR.

United States District Court, D. Kansas.

June 24, 1998.

Charles D. McAtee, Schroer, Rice, P.A., Topeka, KS, for Plaintiff.

Thomas J. Koehler, Michael J. Blake, Levy & Craig, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to recover on a bond issued for the Kansas Avenue bridge project in Topeka, Kansas. Plaintiff was a subcontractor on that project. Defendant issued the bond for the project. Western Bridge Corporation was the general contractor for the project. Following the completion of the project, Western Bridge filed for bankruptcy. This matter is presently before the court upon defendant's motion to dismiss or, in the alternative, for summary judgment.[1]

In the instant motion, the defendant raises a number of arguments. In the course of filing several briefs on these issues, the parties have withdrawn certain claims and certain arguments.[2] The court shall focus only on the issues that remain for decision in this memorandum and order.

### I.

The defendant argues that this action should be dismissed because plaintiff, a foreign corporation, has not registered to do business in Kansas as required by K.S.A. 17–7307. This statute states in pertinent part:

> A foreign corporation which is required to comply with the provisions of K.S.A. 17–7301 and 17–7302 and which has done business in this state without authority shall not maintain any action or special proceeding in this state, unless and until such corporation has been authorized to do business in this state and has paid to the state all taxes, fees and penalties which would have been due for the years or parts thereof during which it did business in this state without authority.

A foreign corporation barred from maintaining an action in the Kansas courts by virtue of this statute is also precluded

---

1. The defendant has also filed a motion to strike or to disregard the affidavit of Mr. Timothy W. Noel, President of A.H.L. Inc., that was attached to plaintiff's response to the instant motion. The defendant contends that the affidavit must be stricken or disregarded because it contains legal conclusions and is not based on personal knowledge. The court shall not strike the affidavit, but shall simply disregard those portions of the affidavit not based on personal knowledge and those portions containing legal conclusions. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1459 (S.D.N.Y.1983).

2. Plaintiff has withdrawn its claim for damages for profit on unperformed work. Defendant has withdrawn its argument that the claim filed by plaintiff with the Kansas Department of Transportation·pursuant to K.S.A. 68–410 was not properly verified.

from maintaining an action in the federal courts of the state. *Wilson v. Williams,* 222 F.2d 692, 697 (10th Cir.1955).

The parties are at odds over whether plaintiff "did business" in Kansas. The definition of "doing business" in Kansas is set forth in K.S.A. 17–7303 as follows:

Every foreign corporation that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents in this state for sale, delivery or distribution, shall be held to be doing business in this state within the meaning of this act.

Plaintiff has acknowledged that it was not registered pursuant to K.S.A. 17–7301. Plaintiff, however, contends that it was not doing business in Kansas as defined in K.S.A. 17–7303. Plaintiff asserts that it did not have an "office," "place of business" or "distributing point" in Kansas. It further asserts that it did not deliver any "wares or products to resident agents in [Kansas] for sale, delivery or distribution." Finally, plaintiff argues that K.S.A. 17–7307(a) is not applicable to foreign corporations that provide only "services." In the alternative, plaintiff contends that it should be given reasonable time to comply with K.S.A. 17–7301 if it is found that it was doing business in Kansas during its performance of the subcontract for the Kansas Avenue bridge job.

The defendant contends that plaintiff cannot bring this action because it has never been authorized to do business in Kansas. The defendant argues that plaintiff was doing business in Kansas when it performed work on the Kansas Avenue bridge as a subcontractor and, therefore, was required to comply with K.S.A. 17–7301. The defendant asserts that plaintiff did business in Kansas pursuant to K.S.A. 17–7303 because it (1) had an office in Kansas, (2) had a place of business in Kansas, (3) had a distributing point in Kansas, and (4) delivered its products, equipment and supplies to its employees on the job.

The determination of whether a foreign corporation is doing business in Kansas requires an evaluation of the particular facts of each situation. *Toedman v. Nooter Corp.,* 180 Kan. 703, 308 P.2d 138, 142 (1957).

Fixed, definite or precise rules cannot be applied. *Id.* "Doing business" in Kansas means that a foreign corporation must (1) establish an office, place of business or distribution point in Kansas, or (2) deliver its wares or products to agents in Kansas for sale, delivery or distribution. *Panhandle Agri–Service. Inc. v. Becker,* 231 Kan. 291, 644 P.2d 413, 417 (1982).

*Toedman,* a case cited by defendant in support of its position, provides some guidance for the court in this case. Leonard Construction Company entered into a contract to erect a plant as general contractor for a company at Galena, Kansas. Leonard Construction then entered into a contract with the defendant to perform some subcontractor work at the site. The defendant, a Missouri corporation, agreed to fabricate some tanks at its plant in Missouri and then erect them at the site in Kansas. The defendant was responsible for providing all the materials and furnishing all the work for the erection of the tanks at the new facility. The defendant worked in Kansas for approximately six months erecting the tanks. They had a room for their workmen to change clothes at the site. They did not have a telephone listing. They used the general contractor's telephone to handle any phone messages. They usually used a local bank for their banking business, but they may have used a bank in Joplin, Missouri for this job. They used the general contractor's office to examine blueprints. On the basis of these facts, the Kansas Supreme Court concluded that the defendant was doing business in Kansas. The Court concluded: "The facts and circumstances of this operation in Kansas bring the defendant corporation well within the provisions of G.S.1949, 17–506 [the predecessor to K.S.A. 17–7303] in that the defendant corporation had 'or place of business within this state.'" 308 P.2d at 142.

Many of the facts pertinent to this motion are not in dispute. Plaintiff is a foreign corporation. It has not been authorized to do business in Kansas. In February 1995, plaintiff entered into a written subcontract with Western Bridge Corporation to work on the Kansas Avenue bridge project. Plaintiff was to blast clean, prime and paint several

spans on the Kansas Avenue bridge project. The subcontract required plaintiff to supply the labor, equipment, materials and supplies to perform the work, but plaintiff apparently supplied only the labor for the work. Western Bridge supplied the blast materials and the primer. Noel, the President of plaintiff, arrived at the site on March 1, 1995. Plaintiff proceeded to perform its work. Noel initially had a telephone at the site, but he had it removed. The telephone at Western Bridge's office was used when one was necessary. Noel and another employee of plaintiff had a personal trailer at the site. Plaintiff also used the office at Western Bridge when one was necessary.

A careful review of the facts here reveals, even when viewed in the light most favorable to the plaintiff, that plaintiff was doing business in Kansas when it performed work on the Kansas Avenue bridge project. We cannot agree with the plaintiff that K.S.A. 17–7303 does not apply to corporations that provide only "services." Such a construction of the statute is too narrow. The activities by the plaintiff in Kansas during the Kansas Avenue bridge project show that plaintiff delivered its wares or products to Kansas. The situation presented here is similar to the circumstances in *Toedman*. The contacts that the defendant corporation there had with Kansas were much like those of the plaintiff in this case. In sum, the court is persuaded that the plaintiff was "doing business" in Kansas during its work on the Kansas Avenue bridge project. In addition, the court believes the facts show that plaintiff established a place of business in Kansas. The facts are unclear as to whether plaintiff had an office in Kansas, but we are persuaded that plaintiff did have a place of business. Although this term is not defined in this statute, the Kansas Supreme Court has determined in another context that "place of business" refers to the place where services are actually performed. *See Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 654 P.2d 464, 469 (1982) (phrase "place of business" within context of statute governing local retailers' sales tax on services refers to place where services are actually performed, not the main office of the retailer).

The conclusion reached by this court is in accord with the decisions of other courts in states with statutes similar to K.S.A. 17–7307. In the context of construction work, the majority rule is that the performance of construction work by a foreign corporation in a state is generally considered "doing business" in the state, requiring that the corporation comply with state requirements before being allowed access to state courts on claims arising from that work. *See* 90 A.L.R.3d 937 "Construction Work by Foreign Corporation as Doing Business for Purposes of Statute Requiring Foreign Corporation to Qualify as Condition of Access to Local Courts" (1997). Moreover, in cases with facts similar to those in this case, courts have reached the same result as we did here. *See, e.g., Anthony Miller, Inc. v. Taylor–Fichter Steel Construction Co.*, 139 S.W.2d 657 (Tex.Civ.App. 1940) (contract for cleaning of bridge within state was sufficient contact with state to require foreign corporation to comply with laws governing corporate registration).

 Having determined that plaintiff cannot bring the instant action at this time, we must consider whether we should dismiss this case or allow plaintiff some time to comply with the requirements of K.S.A. 17–7301. Plaintiff seeks additional time to comply with the state requirements and asks that this action be stayed pending this period. Defendant argues that this action should now be dismissed with prejudice as plaintiff has had notice of this problem and has not taken any steps to comply with Kansas law. The court believes that plaintiff should be given time to comply with K.S.A. 17–7301. Kansas courts have generally allowed a foreign corporation not authorized to do business in the state prior to the commencement of an action to subsequently comply and then pursue its case. *See Corco, Inc. v. Ledar Transport, Inc.*, 24 Kan.App.2d 377, 946 P.2d 1009, 1010 (1997); *Ryan Live Stock & Feeding Co. v. Kelly*, 71 Kan. 874, 81 P. 470, 470 (1905); *Vickers v. Buck's Stove & Range Co.*, 70 Kan. 584, 79 P. 160, 161 (1905); *State v. American Book Co.*, 69 Kan. 1, 76 P. 411, 416 (1904). *See also Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 936 (10th Cir. 1977). Accordingly, the court shall stay this action for one month while plaintiff complies with the provisions of K.S.A. 17–7301.

## II.

### A.

■ The defendant has also argued that plaintiff did not sufficiently comply with K.S.A. 68–410 prior to bringing this action. The defendant asserts that, contrary to this statute, plaintiff (1) failed to submit an itemized statement of its claimed indebtedness, (2) dated its statement prior to the acceptance of the project instead of six months after its completion, and (3) did not properly submit its statement to the Kansas Department of Transportation (KDOT).

The arguments made by the defendant allege violations of K.S.A. 68–410 which provide in pertinent part as follows:

That any person to whom there is due any sum for labor or material for any item covered by this act or his or her assigns, may bring an action on said bond for the recovery of said indebtedness and said suit may be brought in any county of the state where any part of the contract has been performed: Provided further, That no such action shall be brought on said bond unless within six (6) months after the completion date of said contract, according to the records of the secretary of transportation, there be filed with the secretary an itemized statement of the amount of such indebtedness. . . .

The defendant initially suggests that the plaintiff failed to properly itemize the statement sent to KDOT. The defendant asserts that the statement (1) contains only lump sum amounts, and (2) does not specifically set forth the amounts for labor, supplies, materials, tools and equipment.

In the letter sent to KDOT, plaintiff itemized its claim as follows:

1. AHL blasted and primed sections of bridge with primer furnished by Western Bridge Corp. The primer failed through no fault of AHL and at the request of Western Bridge Corp., AHL reblasted and reprimed the area where the primer had failed. Agreed price $21.600.00.

2. AHL completed the blasting and painting of 78,300 sq.ft. of steel at a price of $3.77 per sq.ft. for $295,191.00. AHL has been paid $144,000.00. Balance still owed $151,191.00.

3. Western Bridge Corp. was to furnish all containment, including the construction, moving and reconstruction. They failed to do so and requested AHL to assist in the construction, moving and reconstruction. AHL used 9 men for 8 weeks on the containment which should have been furnished by Western Bridge Corp. at the following costs:

| | |
|---|---|
| 9 men for 8 weeks = 2.160 hrs. @ $32.50 per hour | $70,200.00 |
| 8 weeks of overhead @ $880 per week | 5,860.00 |
| Profit at 9% | 6,318.00 |
| Total | $81,678.00 |

4. Original contract was to be $700,000.00. Western Bridge Corp. terminated the contract without justification after completion of $295,191.00. Profit on unfinished work of $404,809.00 @ 9%, $36,439.00.

5. It was agreed that if the Kansas DOT paid a premium or an additional amount for work over the railroad tracks that the contract of AHL would be increased accordingly. AHL believes that Western Bridge Corp. was paid or was entitled to be paid a premium on that span but no additional compensation has been paid to AHL. Amount of claim undetermined.

6. Because of Western Bridge Corp.'s failure to pay AHL as required by the contract, certain of AHL bills were not paid and these bills were paid by Western Bridge Corp. and AHL acknowledges that Western Bridge Corp. may have a minor offset for those expenses of AHL not related to the containment which were paid by Western Bridge Corp. Total claim $290.902.00.

The defendant contends that the itemization supplied by the plaintiff was inadequate because it failed to set forth specific amounts for supplies, materials or labor furnished, used or consumed in connection with the project. The defendant asserts that the phrase "such indebtedness" in K.S.A. 68–410 refers to the prior phrase in the statute, "indebtedness incurred for supplies, materials or labor furnished, used or consumed in connection with or in or about the construc-

tion of the project for which the contract has been let, including gasoline, lubricating oils, fuel oils, greases, coal and similar items used or consumed and used directly in carrying out the provisions of the contract."

Neither side has provided any Kansas case law on the proper construction of this statute concerning this issue, and the court failed to discover a relevant case. In another context, the Kansas courts have determined that the standard appropriate for testing the adequacy of a requirement of itemization of labor and materials furnished is "not too demanding." *See J. Walters Construction Co. v. Greystone South Partnership*, 15 Kan.App.2d 689, 817 P.2d 201, 207–08 (1991) (itemization for labor and materials under mechanic's lien statute adequate where contractors and subcontractors went beyond giving contract price). The court is not persuaded that a more demanding standard is required under K.S.A. 68–410, given the failure of the statute to provide any specifics concerning the requirements of itemization. The court believes the itemization supplied by the plaintiff was sufficient to comply with K.S.A. 68–410. The statute does, as noted by the defendant, refer to "such indebtedness" as the amounts incurred for supplies, material and labor. Nevertheless, the court believes that the itemization supplied by the plaintiff was sufficient given the circumstances of this case. Plaintiff has acknowledged that it supplied only the labor for the project. The itemization furnished by the plaintiff to KDOT adequately seeks payment for labor costs. Plaintiff provided sufficient facts to indicate what it believed was due. The court finds that the purpose of the statute was served by the filing of this notice.

### B.

The defendant next argues that the notice sent to KDOT was not timely filed. The defendant suggests that the notice was dated prior to acceptance of the project and not within six months after the completion of the project.

The court finds no merit to this argument. The record shows that the project was accepted by KDOT on March 1, 1996. Plaintiff submitted its notice of claim on August 17, 1996. Accordingly, the notice was filed within the six-month time limitation contained in K.S.A. 68–410.

### C.

█ Finally, the defendant contends that the notice under K.S.A. 68–410 was improper because it was not delivered to the Secretary of Transportation. The defendant notes that the claim was sent to John C. Kleinschmidt, "Change Order Technician" at KDOT, not to the Secretary of Transportation as required by the statute. Plaintiff acknowledges that the notice was indeed sent to Mr. Kleinschmidt. Plaintiff notes, however, that Mr. Kleinschmidt is the Secretary of Transportation's designated representative for receiving such notices.

The court again finds no merit to the argument of the defendant. The record discloses that the Secretary of Transportation has named Mr. Kleinschmidt as his designated representative for receiving notices under K.S.A. 68–410. Accordingly, plaintiff's decision to send the notice to Mr. Kleinschmidt was appropriate and in substantial compliance with the terms of the statute. *See Rodack v. State Highway Comm.*, 225 Kan. 343, 591 P.2d 630, 634 (1979) (notice of claim under K.S.A. 68–419 sent to State Highway Commission and handled by attorney designated to handle such notice was sufficient to show substantial compliance with statute even though statute required that notice be "served" upon Director of Highways).

**IT IS THEREFORE ORDERED** that this action is hereby stayed for one month to allow plaintiff to comply with the provisions of K.S.A. 17–7301. Failure to comply with the provisions of K.S.A. 17–7301 will result in the granting of the defendant's motion and dismissal of this action.

**IT IS FURTHER ORDERED** that the remainder of defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. # 42) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to strike or disregard the affidavit of Tim Noel (Doc. # 51) is hereby granted in part and denied in part. The court shall disregard those portions of the affidavit not based on personal knowledge

and those portions containing legal conclusions.

**IT IS SO ORDERED.**