(134 P.3d 669)
No. 94,245

ALLIANCE STEEL, INC., *Appellant*, v. TROY PILAND, TERRANCE PILAND, DOUGLAS GROOMS, d/b/a ASSOCIATED CONSTRUCTION and/or ASSOCIATED CONSTRUCTION SERVICE, and ROBERT D. DUNLAP, d/b/a DUNLAP CONSTRUCTION, *Appellees.*

Opinion filed May 19, 2006.

*Douglas M. Crotty*, of Crotty Law Office, P.A., of Garden City, and *Ross A. Plourde*, of McAffee & Taft, of Oklahoma City, Oklahoma, for appellant.

*William I. Heydman*, of Heydman Kliewer, LLP, of Garden City, for appellees Troy Piland and Terrance Piland.

*Gerald O. Schultz*, of Law Offices of Gerald O. Schultz, of Garden City, for appellee Robert D. Dunlap, d/b/a Dunlap Construction.

Before GREENE, P.J., PIERRON and CAPLINGER, JJ.

PIERRON, J.: Appellant, Alliance Steel, Inc., (Alliance) appeals the district court's granting of appellees' motion to dismiss this mechanic's lien foreclosure action. The court applied Kansas' closed-door statute, K.S.A. 17-7307(a), and held that a foreign corporation that conducts business in Kansas without authority and has failed to comply with the registration statutes may not maintain an action in Kansas. Appellant contends it is not barred by K.S.A. 17-7307(a) from bringing an action in Kansas courts because its activities are limited to interstate commerce and it is not subject to the registration requirements of Kansas. In other words, appellant believes that although it may be "doing business" in Kansas in one sense, it is "not doing business" as contemplated by K.S.A. 17-7303 and K.S.A. 17-7307(a). We agree.

The facts in this case are fairly straightforward. Appellees Troy Piland and Terrance Piland owned real property in Garden City. They entered into an agreement with appellee Robert D. Dunlap, d/b/a Dunlap Construction for the construction of a preengineered metal building on the property. Dunlap then subcontracted with appellee Douglas Grooms, d/b/a Associated Construction and/or Associated Construction Service, for the purchase and erection of the metal building. Grooms in turn contracted with Alliance to furnish the materials and supplies necessary for construction of the building.

Alliance provided supplies and materials to Grooms pursuant to the contract. Piland paid Dunlap, Dunlap paid Grooms, but Grooms did not pay Alliance. On December 17, 2003, appellant filed a lien on the Pilands' property through the Kansas mechanic's lien statutes in the amount of $54,673.00. On April 29, 2004, appellant filed a petition to foreclose the mechanic's lien. This petition stated that Alliance was an Oklahoma corporation "authorized to and doing business in the State of Kansas." The Pilands filed a

motion to dismiss the action, arguing appellant's mechanic's lien was filed out of time and was invalid under Kansas law. Alliance filed a first amended petition on May 27, 2004, and a second amended petition on July 27, 2004. In both amended petitions, Alliance stated it was an Oklahoma corporation "authorized to and doing business in Kansas."

On September 8, 2004, the Pilands filed a motion to dismiss Alliance's foreclosure petition based on K.S.A. 17-7307, arguing that Alliance was an Oklahoma corporation doing business in Kansas that was not authorized to do business in Kansas and did not, therefore, have access to the Kansas courts. Dunlap then also moved for dismissal, incorporating the Pilands' reasons. Alliance filed a response to the motions to dismiss arguing that it was *not* doing business in Kansas and seeking leave to amend its petition to clarify that it was not doing business in Kansas. Attached to this response was an affidavit by Larry Thomas, president of Alliance, stating that Alliance is an Oklahoma corporation and

"maintains no office, place of business, manufacturing facility or distribution point in Kansas. It has no employees or agents in Kansas and does not deliver any wares or products to any agent in Kansas for sale, delivery or distribution. Rather, it manufactures preengineered steel buildings and steel building components in Oklahoma and sells such buildings and components from its office in Oklahoma City, Oklahoma through interstate commerce."

On September 24, 2004, Alliance filed a motion to amend the petition and a document entitled "Amendment to Petition" requesting the district court to grant leave to amend its petition by deleting the phrase "authorized to and doing business in the State of Kansas." The appellees (collectively the Pilands and Dunlap) contend this motion to amend was never set for a hearing and never heard by the court. Appellant contends it was allowed to amend its petition. The record is not clear whether it was.

On October 15, 2004, the district court entertained oral arguments on the motions to dismiss and appellant's response. The court took the motions under advisement. On February 9, 2005, the court granted the appellees' motions to dismiss, holding that appellant was not authorized to bring a cause of action in Kansas without being registered with the Secretary of State:

"1. That [appellant] is an Oklahoma corporation.

"2. That as of the day of the filing of the Petition and filing of the Motion[s] to Dismiss, [appellant] was not registered in the state of Kansas.

"3. That [appellant] provided materials to Douglas Grooms d/b/a Associated Constructions Services, under a subcontract which Douglas Grooms had with Dunlap Construction.

"4. Under the cases *Corco, Inc. vs. Ledar Transport, Inc.*, 24 Kan. App. 2d 377 (1997) and *Panhandle Agri-Service Inc. vs. Becker*, 231 Kan. 291 (1982), 'if a foreign corporation had done business in Kansas without authority and has failed to comply with the registration statutes, it may not maintain an action in Kansas.'

"5. The Court further accepts the arguments and authority of [appellees'] briefs and grants the Motion[s] to Dismiss."

The court dismissed Alliance's petition without prejudice.

Appellant argues it is not barred by K.S.A. 17-7307(a) from bringing an action in the Kansas courts because its activities are limited to· interstate commerce and it is not subject to the registration requirements of Kansas.

In *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001), the Kansas Supreme Court explained the standard of review for motions to dismiss. The granting of motions to dismiss has not been favored by our courts. 271 Kan. at 656. The standard of review as found in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, Syl ¶¶ 1-3, 620 P.2d 837 (1980), is as follows:

"When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer.

"Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

"In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself."

In *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991), the court further explained the review of a motion to dismiss:

> "In essence, we are required to assume that the facts alleged by the plaintiffs are true, and we are required to make any reasonable inferences to be drawn from those facts. In addition, it is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on any possible theory we can divine."

However, the question of whether a corporation is doing business in a particular state is a question of fact or a mixed question of fact and law. See Yeager, *Borders and Barriers, Definitions of Authority to do Business as a Foreign Corporation*, 102 Com. L.J. 398, 413 (Winter 1997). The function of an appellate court is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

K.S.A. 17-7307(a) provides:

> "A foreign corporation which is required to comply with the provisions of K.S.A. 17-7301 and 17-7302 and which has done business in this state without authority shall not maintain any action or special proceeding in this state, unless and until such corporation has been authorized to do business in this state and has paid to the state all taxes, fees and penalties which would have been due for the years or parts thereof during which it did business in this state without authority. This prohibition shall not apply to any successor in interest of any such foreign corporation."

It is well-established authority that a State cannot require a foreign corporation to qualify to do business within its boundaries if the business of the corporation is limited wholly and entirely to interstate sales. On the other hand, a foreign corporation engaged in intrastate as well as interstate commerce or business can be required to so qualify by a State. See *Buck Stove Co. v. Vickers*, 226 U.S. 205, 57 L. Ed. 189, 33 S. Ct. 41 (1912); *International*

*Textbook Co. v. Pigg*, 217 U.S. 91, 54 L. Ed. 678, 30 S. Ct. 481 (1910).

The parties obviously disagree whether appellant did business in Kansas. K.S.A. 17-7303 provides a definition of what constitutes doing business in Kansas:

"Every foreign corporation that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents in this state for sale, delivery or distribution, shall be held to be doing business in this state within the meaning of this act."

In addition to the statutory definition of doing business, the Kansas Supreme Court has determined in another context that "place of business" refers to the place where services are actually performed. See *Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 383-86, 654 P.2d 464 (1982) (phrase "place of business" within context of statute governing local retailers' sales tax on services refers to place where services are actually performed, not the main office of the retailer).

Here, the first problem for appellant is the statement in its petition and all amended petitions that it was authorized and doing business in the State of Kansas. Appellant began back-pedaling and claiming it was *not* doing business in Kansas when it became obvious it would have to register with the Kansas Secretary of State in order to prevent the petitions from being dismissed for reasons stated on the face of the petition and amended petitions.

Appellant now contends it was not doing business in Kansas as defined in K.S.A. 17-7303. Appellant states it did not have an "office," "place of business" or "distributing point" in Kansas. It further asserts it did not deliver any "wares or products to resident agents in [Kansas] for sale, delivery or distribution." Appellant argues that it did not even use its own trucks to transport the products shipped to Kansas. Appellant contends it merely delivered its goods through interstate commerce to customers in Kansas and other states to which it shipped its building materials.

Appellant did not ask in the alternative that it should be given reasonable time to comply with K.S.A. 2005 Supp. 17-7301 if the court found that it was doing business in Kansas when it provided

materials and services for construction of the Pilands' metal building. Apparently, appellant argues that dismissal without prejudice and the ability to refile after compliance with Kansas corporation statutes is not a legitimate remedy in this case. Compare *Corco, Inc. v. Ledar Transport, Inc.*, 24 Kan. App. 2d 377, 379, 946 P.2d 1009 (1997) (no dispute whether Ledar was doing business in Kansas and court held proper remedy was to dismiss without prejudice and give Ledar opportunity to comply with Kansas corporation statutes and then reassert its claim, despite risk that the statute of limitations might run); *Ryan Live-Stock & Feeding Co. v. Kelly*, 71 Kan. 874, 81 Pac. 470 (1905); *Vickers v. Buck*, 70 Kan. 584, 585-86, 79 Pac. 160 (1905). Appellant argues that the Kansas saving statute, K.S.A. 60-518, would probably not be available to extend the applicable limitations period for the foreclosure of a mechanic's lien since a mechanic's lien foreclosure is a statutorily created action. See *Lakeview Village, Inc. v. Board of Johnson County Comm'rs*, 232 Kan. 711, 723, 659 P.2d 187 (1983) (savings statutes do not apply to statutes creating new causes of action which did not exist at common law). Consequently, appellant maintains a new mechanic's lien foreclosure action would be time barred.

Appellees contend that appellant cannot bring this action because in its petitions appellant admitted it was doing business in Kansas and it has never been authorized to do business in Kansas. Appellees also argue appellant *was* doing business in Kansas by virtue of 14 factors that can be extrapolated from the pleadings indicating that appellant: (1) delivered an entire building into Kansas; (2) consented to furnish materials and supplies to be used in Kansas; (3) furnished materials and supplies which were consumed in Kansas; (4) attempted to extend commercial credit in Kansas to a resident of Kansas; (5) failed to apply Kansas sales tax; (6) delivered the supplies, materials, and equipment into Kansas by virtue of its registration with the Kansas Corporation Commission; (7) filed a lien statement in Kansas against Kansas real estate; (8) entered into contracts and agreements with Kansas residents; (9) granted the Kansas buyer a year-long warranty on its products; (10) used Kansas storage facilities; (11) redesigned the supplied building for wind-load capacities; (12) loaded and unloaded supplies,

materials, and equipment in Kansas; (13) executed contracts, bills of lading, and delivery receipts in Kansas; and (14) inspected and made representations and guarantees concerning its products.

Situations involving foreign corporations doing business in other states are generally very fact specific. As a consequence, the determination of whether a foreign corporation is doing business in Kansas requires the courts to evaluate the particular facts of each situation. *Toedman v. Nooter Corporation*, 180 Kan. 703, 707, 308 P.2d 138 (1957). Pursuant to K.S.A. 17-7303, doing business in Kansas means that a foreign corporation must (1) establish an office, place of business, or distribution point in Kansas, or (2) deliver its wares or products to agents in Kansas for sale, delivery, or distribution. *Panhandle Agri-Service, Inc. v. Becker*, 231 Kan. 291, Syl. ¶ 2, 644 P.2d 413 (1982).

Panhandle was a Texas corporation engaged in the purchase and sale of hay, feed, yard chemicals, conditioners, and preservatives. Panhandle contracted with Becker to purchase alfalfa. Becker failed to produce the contracted amount of hay. Based on the following facts, the court held that Panhandle was not doing business in Kansas and was not required to register as a foreign corporation before it could sue in Kansas for breach of contract:

"The phrase 'doing business in this state' so as to require registration before maintaining an action is defined by K.S.A. 17-7303 and requires the establishment of an office or place of business within this state, or a distributing point herein, or delivery of its wares or products to resident agents in this state for sale, delivery or distribution. In the present case plaintiff had none of these. It merely sent its agents and trucks into this state to purchase and pick up the hay which was to be sold in Texas. It had no office, place of business or distributing point in Kansas. It did not deliver any wares or products to resident agents in this state for sale, delivery, or distribution. Panhandle was not doing business as that term is defined by K.S.A. 17-7303, was not required to register as a foreign corporation, and was not prohibited by K.S.A. 17-7307(a) from bringing the present action." 231 Kan. at 294.

The appellees note *A.H.L. Inc. of Delaware v. Star Ins. Co.*, 10 F. Supp. 2d 1216, 1218-19, (D. Kan. 1998), where the appellate court held that activities by the plaintiff in Kansas showed that plaintiff delivered its wares or products to Kansas and the plaintiff was doing business in Kansas.

However, the *A.H.L.* court relied on several pertinent facts not present here. Plaintiff was a foreign corporation that had not been authorized to do business in Kansas. Plaintiff entered into a written subcontract with Western Bridge Corporation to work on the Kansas Avenue bridge project. Plaintiff was to blast clean, prime, and paint several spans on the bridge. The subcontract required plaintiff to supply the labor, equipment, materials, and supplies to perform the work, but plaintiff apparently supplied only the labor for the work. Western Bridge supplied the blast materials and the primer. Noel, the president of A.L.H., arrived at the site on March 1, 1995. Plaintiff proceeded to perform its work. Noel initially had a telephone at the site but later had it removed. The telephone at Western Bridge's office was used when one was necessary. Noel and another employee of plaintiff had a personal trailer at the site. Plaintiff also used the office at Western Bridge when one was necessary.

These contacts were much more extensive than the ones in the instant case.

In addition to relying on *Panhandle*, appellant cites a factually similar case found in *Hattiesburg Manufacturing Co. v. Pepe*, 140 So. 2d 449 (La. App. 1962). Hattiesburg got its namesake from its home office in Hattiesburg, Mississippi. It sold building supplies in several southern states which accounted for approximately 12% of its annual sales. Two of Hattiesburg's salesmen made regular weekly trips to Louisiana where they took orders for materials, principally from contractors but occasionally from individuals engaged in construction projects on their own account. The orders were transmitted to the home office in Mississippi and accepted or rejected by the company president. Approved orders were delivered by Hattiesburg's trucks to the purchaser in Louisiana. The vast majority of Hattiesburg's sales were for credit although the record showed that infrequently sales of sample items were made to customers for cash. Hattiesburg's salesmen occasionally received payments by customers, but credit was the main source of payment. It had no warehouse or stock in Louisiana. Although Hattiesburg purchased some materials in Louisiana, such materials were invariably shipped to its warehouse in Mississippi, became

part of its inventory, and from there were reshipped to purchasers. Hattiesburg's salesmen occasionally called upon delinquent customers and sometimes inquired at local banks concerning the sufficiency of checks given by customers in payment of account. But Hattiesburg maintained no account in any bank in Louisiana. Salesmen also made inquiries regarding the credit rating of prospective customers and even used the Louisiana courts to enforce collection of its accounts.

Hattiesburg instituted a personal action against Sam Pepe's property for judgment on a material lien filed as the result of the failure of Pepe's contractor to pay for certain materials supplied by Hattiesburg and incorporated into Pepe's residence. The *Hattiesburg* court held that an unqualified foreign corporation was not barred by the Louisiana closed-door statute from bringing an action on a materialman's lien against the homeowner where the corporation's activities were purely interstate in character. 140 So. 2d at 453.

Appellant correctly argues that in the instant case we are not dealing with the minimal contacts necessary to satisfy the due process concerns of long-arm jurisdiction for subjecting an entity to the jurisdiction of a particular State. Rather, we are dealing with the more substantial contacts necessary to force a foreign corporation to register under a State's corporation statutes. See *A.E. Landvoight, Inc. v. La. St. Emp. Ret. S.*, 337 So. 2d 881, 886 (La. App. 1976) ("We are of the further view that the jurisprudence concerning the amount of business activity required to support state regulation demands considerably more local activity than is necessary to subject a nonresident to a state's jurisdiction for purposes of litigation."). Appellant correctly contends its contacts were not substantial enough to require registration.

The majority rule concerning the application of closed-door statutes in the construction arena is that the performance of construction work by a foreign corporation in a State is generally considered doing business in the state, requiring that the corporation comply with state requirements before being allowed access to state courts on claims arising from that work. See Annot., *Construction Work by Foreign Corporation as Doing Business for Purposes of Statute*

*Requiring Foreign Corporation to Qualify as Condition of Access to Local Courts,* 90 A.L.R.3d 937. While it provided substantial materials involved in construction, appellant was not otherwise involved in the work in Kansas.

Appellees do not provide any case where the minimal amount of contacts, as occurred here, amounted to doing business in a particular state. Appellees instead appear to rely on appellant's statement in its petitions that it was "authorized to and doing business in the State of Kansas." While this may be an admission on the part of Alliance at one point in the litigation, or an oversight, it is just another factor for our consideration in whether appellant was actually doing business in Kansas for the purposes of K.S.A. 17-7303 and K.S.A. 17-7307.

As stated previously, cases of this nature are fact centered. The facts in this case are the reverse direction from those in *Panhandle*. In *Panhandle*, the underlying contact was that the Panhandle sent its agents and trucks into Kansas to purchase and pick up the hay which was to be sold in Texas. In the present case, appellant sent its products into Kansas after they were purchased in Oklahoma. As in *Panhandle*, appellant did not establish an office or place of business within Kansas, a distributing point herein, or deliver its wares or products to resident agents in this state for sale, delivery, or distribution. The fact that it may have done 14 other things in Kansas is not legally important in the application of K.S.A. 17-7307.

We find the district court erred in granting appellees' motion to dismiss. Viewing the facts in the light most favorable to appellant, along with any inferences reasonably drawn therefore, we find the district court should have denied the motion to dismiss. In examining the facts in this case, we find the district court's decision is not supported by substantial competent evidence and does not support the application of K.S.A. 17-7307(a). Appellant was not doing business as that term is defined by K.S.A. 17-7303, was not required to register as a foreign corporation, and was not prohibited by K.S.A. 17-7307(a) from bringing the present action.

Under these facts, the generic language in appellant's earlier petitions referring to doing business in Kansas, which it had asked to be deleted, was not controlling.

Reversed and remanded.